UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHARLES E. PIRCHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| UNITED STATES OF AMERICA, | § | SA-08-CV-0835 NN |
| | § | |
| Defendant. | § | |

## ORDER ON COMPLAINT FOR REVIEW OF JEOPARDY ASSESSMENT

This order addresses plaintiff Charles Pircher's complaint for review of jeopardy assessments made under section 6862 of the Internal Revenue Code (the Code). The Code requires a judicial determination within 20 days of the commencement of a lawsuit.[1] Because Pircher requested an extension of time,[2] the court has an additional 39 days to make a determination—until December 19, 2008.[3] The parties provided the court with briefing and supporting documents for making a determination.[4] After reviewing the pleadings and supporting documents, the court will release one of the jeopardy assessments and sustain the other assessment.

### Factual Background

On May 23, 2008, the Internal Revenue Service (IRS) made two jeopardy assessments

---

[1] 26 U.S.C. § 7429(b)(3).

[2] Docket entry # 9.

[3] 26 U.S.C. § 7429(c) (permitting plaintiff to request a 40-day extension of time).

[4] *See* docket entry #s 10 & 12.

against Pircher for civil penalties under section 6862 of the Code.[5] The assessments involve unpaid payroll taxes for two now-defunct employee leasing companies: Safe Staff, Inc. and United Focus, Inc.[6] The notices of assessment advised Pircher that the IRS had "found that you have diverted corporate funds from Safe Staff Inc. [and United Focus Inc.] . . . ."[7] The notices specified the applicable tax periods. The assessments total over $53 million.[8] On June 30, 2008, Pircher asked the IRS to review the assessments. When the IRS failed to respond to the request, Pircher filed this lawsuit.[9] Pircher maintains the assessments are unreasonable under the circumstances because he does not meet the IRS's criteria for indicating that a person may have concealed or transferred his assets. Pircher maintains that no factual basis exists for concluding that collection of the disputed taxes will be jeopardized by delay.

**Applicable Standards**

Under 26 U.S.C. § 6862, the IRS may expedite the collection of taxes if it determines that such collection will be jeopardized by delay. Expediting the collection of taxes is called a jeopardy assessment. A taxpayer may seek judicial review of a jeopardy assessment in the district court after he exhausts his administrative remedies.[10] A court's review of an assessment

---

[5]Docket entry # 1, exh. A & B.

[6]*Id*.

[7]*Id*.

[8]The jeopardy assessment in regard to United Focus is $15,826,411.81; the jeopardy assessment in regard to Safe Staff is $37,358,837.12.

[9]Docket entry # 1.

[10]*See* 26 U.S.C. § 7429(b)(2).

is limited to two questions: (1) whether the assessment was reasonable under the circumstances and (2) whether the amount assessed was appropriate.[11]  "The [g]overnment has the burden of proof on the first issue and the taxpayer has the burden of proof on the second."[12]  If the government fails to demonstrate that the assessment is reasonable, the court may order the assessment released.[13]

### Reasonableness of the Assessment

The government maintains the assessments are reasonable under the circumstances because Pircher—as a principal of Safe Staff and United Focus—either concealed or dissipated monies owed to the IRS.[14]  The government maintains that Pircher had significant executive and managerial roles in the operations of Safe Staff and United Focus, and used his influence in those companies to transfer millions of dollars from the companies to other entities for his own benefit and to avoid payment of payroll taxes.

"Reasonable under the circumstances" means something more than "not arbitrary or capricious" and something less than "supported by substantial evidence."[15]

> A jeopardy levy is reasonably taken against a taxpayer whom the IRS has determined to be deficient in payment of taxes if: (1) the taxpayer is or appears to

---

[11] *See* 26 U.S.C. § 7429(b).

[12] *Central De Gas De Chihuahua, S.A. v. United States*, 790 F. Supp. 1302, 1304 (W.D. Tex.1992). *See Olbres v. IRS*, 837 F. Supp. 20, 21 (D.N.H. 1993).

[13] *Henderson v. United States*, 949 F. Supp. 473, 475 (N.D. Tex.1996).

[14] Docket entry # 12, pp. 12-17.

[15] *See Varjabedian v. United States*, 339 F. Supp. 2d 140, 144 (D. Mass. 2004); *Granse v. United States*, 892 F. Supp. 219, 223 (D. Minn. 1995); *Olbres v. IRS*, 837 F. Supp. 20, 21 (D.N.H. 1993); *DeLauri v. United States*, 492 F. Supp. 442, 445 (D.C. Tex. 1980).

be designing quickly to depart from the United States; (2) the taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons; or (3) if the taxpayer is in danger of becoming insolvent.[16]

The second circumstance is relevant here. "In determining whether the assessment was reasonable, the [c]ourt may rely on information obtained after the initial jeopardy assessment."[17]

An affidavit by IRS Officer Craig Young and supporting documents support the government's position that Pircher diverted corporate funds owed to the IRS from Safe Staff and United Focus.[18] Young works in the IRS's Collection Division. In the affidavit, Young described the IRS's investigation of several San Antonio employee leasing companies:[19] United Capital Investment Group, Inc.; United Focus; Safe Staff; and AK of Nevada, Inc. Young indicated that AK of Nevada is not significantly material to the jeopardy assessments. According to Young, the IRS's investigation began around September 15, 2007 and determined that significant amounts of payroll taxes had not been paid—$35,565,689 owed by United Capital Investment Group for the time period July 1999 to April 2002; $46,009,112 owed by United Focus for the time period January 2004 to March 2005; and $83,323,457 owed by Safe Staff for the time period January 2005 through June 2006. Young stated that the investigation led the IRS

---

[16]*Henderson*, 949 F. Supp. at 475. *See Granse*, 892 F. Supp. at 223; *DeLauri*, 492 F. Supp. at 445 (D.C. Tex. 1980); *McAvoy v. IRS*, 475 F. Supp. 297, 298 (D.C. Mich. 1979).

[17]*Harvey v. United States*, 730 F. Supp. 1097, 1104 (S.D. Fla. 1990). *See Settipane v. United States*, 352 F. Supp. 2d 27, 30 (D. Mass. 2004); *Miller v. United States*, 615 F. Supp. 781, 785 (D.C. Ohio 1985).

[18]*Id.*, declaration of Internal Revenue Service Officer Craig Young.

[19]A business contracts with an employee leasing company to handle its human resource-related functions, to include payroll management.

to believe that millions of dollars had been electronically transferred from accounts owned by United Focus and Safe Staff to a Pircher-controlled entity known as United Managers Group, Inc., doing business as Paradise Farms. Pircher's involvement can be summarized as follows.

On May 28, 1999—when Pircher served as vice president and corporate secretary of United Capital Investment Group—that entity resolved to purchase 551.55 acres of land in Medina County, Texas. Pircher developed the property into a ranch named Paradise Farms. In December 2002, Pircher incorporated United Managers Group, an entity doing business as Paradise Farms. Pircher and his family reside on Paradise Farms and operate the ranch as a horse-breeding farm. Insurance documents summonsed by the IRS name the Pirchers as the insured parties for the ranch through March 2004. In 2005, the ranch was appraised at over $7.5 million.

When Safe Staff and United Focus existed, Pircher served as general manager. Pircher used the majority of monies from Safe Staff to purchase, develop, and operate Paradise Farms. Pircher received weekly checks, semi-monthly checks, and other transfers from Safe Staff, although IRS source of income documents show no income for Pircher from Safe Staff. Some Safe Staff funds were paid directly to Paradise Farms. From September 1, 2006 through December 1, 2007, at least $7,693,598 was electronically transferred from Safe Staff bank accounts to United Managers Group (Paradise Farms) bank accounts.

On or around December 22, 2004, United Capital Investment Group conveyed Paradise Farms to Medina Heritage, Ltd.—a limited partnership formed on December 18, 2004, using Pircher's address: 1445 CR 2615, Rio Medina, Texas 78066. The transfer of Paradise Farms was recorded 18 months later, on June 20, 2006. Medina Heritage's general partner is Rio Medina

5

Land and Cattle, LLC. Rio Medina Land and Cattle's managers are Pircher Heritage Trust, Jeannie Pircher Trust (Pircher's wife), and Charles E. Pircher Living Trust. Medina Heritage's limited partners include the Pircher Living Trust and the Pircher Heritage Trust. Medina Heritage conveyed Paradise Farms to Wren Alexander Investments, LLC, (Wren) on February 9, 2007 for $2,250,000, despite an appraised value of $7.8 million. At that time, the payroll taxes subject to the jeopardy assessments had accrued, but had not been paid. Pircher continued to reside on, and operate, Paradise Farms.

Many of Pircher's bills have been paid by an entity named Accountex Financial Services, LLC. From September 1, 2006 to December 31, 2007, over $5 million dollars were transferred from Safe Staff to Accountex—$3 million being transferred after IRS officers first contacted the principals of United Capital Investment Group, United Focus, and Safe Staff. Pircher and his wife received checks from Accountex as payroll.

This evidence tends to show that Pircher diverted corporate funds from Safe Staff because it shows transfers from Safe Staff to Pircher or Pircher-controlled entities, but it does not show that Pircher diverted corporate funds from United Focus. The IRS theorizes that Pircher, with the assistance of associates, established United Capital Investment Group, then United Focus, and later Safe Staff, as successive employee leasing companies as a part of a tax-avoidance scheme. As part of the scheme, money was transferred out of each company without paying payroll taxes, before the company ceased to exist. The IRS speculates that because Pircher diverted money from Safe Staff, he must have transferred money from its predecessor, United Focus, in order to develop Paradise Farms. That speculation may be well-grounded—having identified no other source for money to develop Paradise Farms before Safe Staff was created—but the record

contains no evidence showing Pircher diverted money from United Focus. Without evidence, the jeopardy assessment based on unpaid payroll taxes from United Focus is arbitrary or capricious and subject to release. In contrast, the IRS's evidence showing Pircher diverted corporate funds from Safe Staff, although not conclusive, rises above the level of arbitrary and capricious. The evidence supporting the jeopardy assessment based on unpaid payroll taxes from Safe Staff is sufficient to make the assessment reasonable under the circumstances. Having made that determination, the court must determine whether the amount assessed based on diversion of funds from Safe Staff was appropriate.

## Appropriateness of the Amount of the Assessment

"To determine whether the amount assessed is appropriate, the court does not have to find the correct amount of tax liability. Instead, 'the burden is on the taxpayer to show that the method of calculating the assessment amount is fatally defective, irrational, arbitrary, or unsupported.'"[20] "There is a presumption in favor of the IRS that the amount assessed is proper."[21]

Pircher argued about the reasonableness of the assessment, but he didn't address the appropriateness of the amount of the assessment. The IRS explained that it determined the amount of the assessment in regard to Safe Staff using unsigned payroll tax returns for the time periods January 2005 and June 2006, bulk-filed on May 21, 2007, and later unsigned returns filed on July 31, 2007 and August 7, 2007. In the absence of anything rebutting the presumption of

---

[20] *Settipane*, 352 F. Supp. 2d at 31.

[21] *DeLauri*, 492 F. Supp. at 446. *See Miller*, 615 F. Supp. at 786 ("The amount assessed by the Service is rebuttably presumed to be appropriate and reasonable.").

appropriateness of the IRS's calculation, the court finds that the amount of the assessment was appropriate.

### Court's Orders

Because the government did not show that Pircher diverted corporate funds from United Focus, I order the Secretary to abate the jeopardy assessment in regard to United Focus in the amount of $15,826,411.81. Because the government's evidence supporting the jeopardy assessment based on unpaid payroll taxes from Safe Staff is sufficient to make the assessment reasonable under the circumstances and because Pircher has not rebutted the presumption that the amount is appropriate, I SUSTAIN the assessment in regard to Safe Staff in the amount of $37,358,837.12.

**SIGNED** on December15, 2008.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE